# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF LOUISIANA
# SHREVEPORT DIVISION

| | |
|---|---|
| **JIMMIE N. RAY** | **CIVIL ACTION NO. 04-617-P** |
| **VERSUS** | **JUDGE HICKS** |
| **STEVE PRATOR, ET AL.** | **MAGISTRATE JUDGE HAYES** |

## REPORT AND RECOMMENDATION

In accordance with the standing order of this court, this matter was referred to the undersigned Magistrate Judge for review, report and recommendation.

## STATEMENT OF CLAIM

Before the Court is a civil rights complaint filed in forma pauperis by pro se plaintiff Jimmie N. Ray ("Ray"), pursuant to 42 U.S.C. § 1983[1]. This complaint was received and filed in this Court on March 10, 2004. Ray, a pre-trial detainee, is currently incarcerated at the Morehouse Detention Center, but he complains his civil rights were violated by prison officials while incarcerated at the Caddo Correctional Center in Shreveport, Louisiana. He names Steve Prator, John Sell, H. Wilson and Caddo Parish as defendants.

Ray complains he was denied adequate medical treatment for a degenerative back condition and osteoporosis. He complains that his conditions make normal movements

---

[1] Plaintiff filed an amended complaint on October 3, 2005. [Doc. 15]. In said amendment, Plaintiff complains his civil rights were violated by a prison official at Morehouse Correctional Center in August 2005. This civil action pertains only to claims by prison officials at Caddo Correctional Center and any new claims against prison officials at Morehouse Correctional Center should be filed as a separate complaint.

difficult and painful. He claims that on April 11, 2003 and April 13, 2003, the medical staff gave him IBU's. He claims that on April 14, 2003, the nurse denied him the medications prescribed by his family physician. He claims that on April 24, 2003, he saw the doctor and received the medications prescribed by his family physician. He claims that on May 22, 2003, he saw the doctor and was given a prescription. He claims that on June 9, 2003, he returned to the medical department for a follow-up visit and was given a prescription. He claims that on July 6, 2003, he was seen by the medical staff for a sick call. He claims that on July 7, 2003, he returned to the medical department for a follow-up visit. He claims that on July 31, 2003, the medical staff gave him a prescription for IBU's. He claims that on August 14, 2003, he returned to the medical department for a follow-up visit. He claims that on September 2, 2003, the medical staff gave him lower dosages of the medications prescribed by his family physician. He claims that on September 3, 2003, the medical staff gave him a prescription for IBU's. He claims that on September 11, 2003, he saw the doctor and was given a prescription for Ultracet. He claims that on December 1, 2003, he saw the doctor. He claims that on December 6, 2003, the nurse denied him the medications prescribed by his family physician and told him that with more time the medications he was taking would become effective. He claims that on January 15, 2004, he saw the doctor. He claims that on March 17, 2004, he was seen by the medical staff for a sick call and was given a prescription. Ray claims that on May 12, 2004, the nurse denied him a doctor visit and the medications prescribed by his family physician because he was already receiving treatment. He claims that on June 9, 2004, he saw the doctor. He claims that on June 28,

2

2004, the medical staff gave him a prescription for Aleve.

Ray claims that on August 30, 2003, he was punished without a disciplinary hearing for sleeping through headcount. He admits he slept through headcount because of the medication he was taking. Ray complains that his property was taken from him and he was forced to sit and lie on a bed with no mattress and bedding for ten hours. He claims he filed a grievance in the administrative remedy procedure regarding this incident on August 30, 2003. He claims the staff never responded to this grievance.

Ray complains that while working on this complaint, he was denied legal materials. He also complains that his copies were limited. Ray admits that he did not lose the right to commence this complaint.

Accordingly, Ray seeks a medical evaluation by a specialist and monetary and punitive damages.

For the following reasons, Ray's complaint should be dismissed with prejudice as frivolous.

## **LAW AND ANALYSIS**

**Inadequate Medical Care**

The standard to apply in analyzing an inadequate medical care claim asserted by a pre-trial detainee depends upon whether the claim is directed to a "condition of confinement" or to an "episodic act or omission." *Scott v. Moore,* 114 F.3d 51, 53 (5th Cir. 1997), quoting *Hare v. City of Corinth,* 74 F.3d 633, 644 (5th Cir. 1996). "A 'condition of confinement' case is a 'constitutional attack on general conditions, practices, rules, or

restrictions of pretrial confinement.'" *Scott,* 114 F.3d at 53, quoting *Hare,* 74 F.3d at 644.[2]

An episodic act or omission case is defined as follows:

> [W]here the complained-of harm is a particular act or omission of one or more officials, the action is characterized properly as an 'episodic act or omission' case and is not amendable to review under the *Wolfish* test. [I]n an episodic act or omission case, an actor usually is interposed between the detainee and the municipality, such that the detainee complains first of a particular act of, or omission by, the actor and then points derivatively to a policy, custom, or rule (or lack thereof) of the municipality that permitted or caused the act or omission. [Internal citations and quotation marks omitted.]

*Id.*

In *Nerren v. Livingston Police Dept.,* 86 F.3d 469 (5th Cir. 1996), the Fifth Circuit classified a case involving the alleged denial of adequate medical care to an arrestee as an episodic case. Thus, the instant claim is analyzed as an episodic act case. In *Nerren*, the court applied a deliberate indifference standard stating, "a state official's episodic act or omission violates a pretrial detainee's due process right to medical care if the official acts with subjective deliberate indifference to the detainee's rights." The court then defined subjective deliberate indifference as "subjective knowledge of a substantial risk of serious medical harm, followed by a response of deliberate indifference." *Nerren,* 86 F.3d at 473. This is the same standard applicable to convicted prisoners,[3] that is, the medical care must

---

[2]In such a case, the reasonable relationship test of *Bell v. Wolfish*, *supra,* is applicable. Under this test, if the condition of confinement is reasonably related to a legitimate, non-punitive governmental objective, the condition is constitutional. *Scott,* 74 F.3d at 53.

[3]The Eighth Amendment applies to convicted prisoners. There are two requirements that must be met to show that a prison official has violated the Eighth Amendment. The first is an objective requirement that the inmate allege a sufficiently serious deprivation. *Farmer v. Brennan*, 511 U.S. 825, 114 S.Ct. 1970, 128 L.Ed.2d 811, 823 (1994). Second, only the

4

be "sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). Thus, Plaintiff must allege and be able to prove that each named Defendant has been deliberately indifferent to his serious medical needs or the claim is subject to dismissal as frivolous. *Graves v. Hampton*, 1 F.3d 315, 319-20 (5th Cir. 1993). Deliberate indifference encompasses only unnecessary and wanton infliction of pain repugnant to the conscience of mankind; thus, the test is "subjective recklessness" as used in the criminal law. *Norton v. Dimazana*, 122 F.2d 286, 292 (5th Cir. 1997).

The record does not contain facts which sufficiently show that the named Defendants have been deliberately indifferent to any serious medical needs. As discussed above, a constitutional violation requires a sufficiently serious deprivation and deliberate indifference on the part of the defendant prison official. *Farmer, supra*.

To the contrary, the record demonstrates that the Defendants were attentive to the medical needs of Plaintiff. It has been consistently held that an inmate who has been examined by medical personnel fails to set forth a valid showing of deliberate indifference to serious medical needs. *Norton v. Dimazana*, 122 F.2d 286, 292 (5th Cir. 1997); *Callaway v. Smith County*, 991 F. Supp. 801, 809 (E.D. Tex. 1998); *Spears v. McCotter*, 766

---

unnecessary and wanton infliction of pain implicates the Eighth Amendment. A prison official must have a sufficiently culpable state of mind, defined as deliberate indifference or knowing disregard of an excessive risk to inmate health or safety. *Farmer*, 128 L.Ed.2d at 825; *Reeves v. Collins*, 27 F.3d 174, 176 (5th Cir. 1994). Under this standard, a lack of proper inmate medical care can be cruel and unusual punishment only if it is "sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285 (1976).

5

F.2d 179 (5th Cir. 1985); *Mayweather v. Foti*, 958 F.2d 91 (5th Cir. 1992). Plaintiff claims he was examined by the medical staff on numerous occasions and was given medications. He claims that on April 11, 2003 and April 13, 2003, the medical staff gave him IBU's. He claims that on April 24, 2003, he saw the doctor and received the medications prescribed by his family physician. He claims that on May 22, 2003, he saw the doctor and was given a prescription. He claims that on June 9, 2003, he returned to the medical department for a follow-up visit and was given a prescription. He claims that on July 6, 2003, he was seen by the medical staff for a sick call. He claims that on July 7, 2003, he returned to the medical department for a follow-up visit. He claims that on July 31, 2003, the medical staff gave him a prescription for IBU's. He claims that on August 14, 2003, he returned to the medical department for a follow-up visit. He claims that on September 2, 2003, the medical staff gave him lower dosages of the medications prescribed by his family physician. He claims that on September 3, 2003, the medical staff gave him a prescription for IBU's. He claims that on September 11, 2003, he saw the doctor and was given a prescription for Ultracet. He claims that on December 1, 2003, he saw the doctor. He claims that on January 15, 2004, he saw the doctor. He claims that on March 17, 2004, he was seen by the medical staff for a sick call and was given a prescription. He claims that on June 9, 2004, he saw the doctor. He claims that on June 28, 2004, the medical staff gave him a prescription for Aleve.

Plaintiff's allegations, if accepted as true, may amount to a state law claim for negligence, a tort. However, mere negligence, neglect or medical malpractice does not

6

amount to a denial of a constitutional right as these actions on the part of the Defendants do not rise to the level of a constitutional tort. *See Daniels v. Williams*, 474 U.S. 327, 329-30, 106 S. Ct. 662, 664 (1986); *Estelle*, 429 U.S. at 106, 97 S. Ct. at 292; *Lewis v. Woods*, 848 F.2d 649, 651 (5th Cir. 1988). The fact that Plaintiff does not believe that his medical treatment was as good as it should have been is not a cognizable complaint under the Civil Rights Act. *See Spears v. McCotter*, 766 F.2d 179, 181 (5th Cir. 1985). Prisoners are not constitutionally entitled to the best medical care that money can buy. *See Mayweather v. Foti*, 958 F.2d. 91 (5th Cir. 1992).

Accordingly, Plaintiff's complaint regarding the denial of medical care should be dismissed as frivolous.

**Due Process Rights**

Plaintiff claims that on August 30, 2003, he was denied his property, mattress and bedding for ten hours after he slept through morning head count. He complains that he was disciplined without a hearing. It should first be noted that §1983 does not establish substantive rights, but only provides a method for vindicating federal rights conferred elsewhere. *Olabisiomotosho v. City of Houston*, 185 F.3d 521, 525 (5th Cir. 1999). Because Ray is a pre-trial detainee and not a convicted prisoner, the Eighth Amendment's prohibition against cruel and unusual punishment is inapplicable. *Edwards v. Johnson*, 98-30972, p.4 (5th Cir. 2000) (2000WL373976), citing, *Ortega v. Rowe*, 796 F.2d 765, 767 (5th Cir. 1986), *cert. denied*, 481 U.S. 1013, 107 S.Ct. 1887 (1987). A pre-trial detainee's constitutional claims are considered under the Fourteenth Amendment due process clause

rather than the Eighth Amendment. Id. In evaluating such constitutional claims, the Court must first classify them as in *Olabisiomotosho v. City of Houston,* 185 F.3d 521 (5th Cir. 1999), where the Fifth Circuit established a format for the proper analysis applicable to constitutional challenges by pre-trial detainees:

> We begin by deciding whether to classify the "challenge as an attack on a 'conditions of confinement' or as an 'episodic act or omission.' The former category would include such claims as "where a detainee complains of the number of bunks in a cell or his television or mail privileges." The latter category, on the other hand, occurs "where the complained-of harm is a particular act or omission of one or more officials."
>
> * * * In an episodic act or omission case, . . . the plaintiff "must establish that the official(s) acted with subjective deliberate indifference to prove a violation of [his] constitutional rights." Subjective deliberate indifference means "the official had subjective knowledge of a substantial risk of serious harm to a pre-trial detainee but responded with deliberate indifference to that risk."

*Olabisiomotosho*, 185 F.3d, at 526 (citations omitted).

A state official's constitutional liability to pre-trial detainees for episodic acts or omissions should be measured by a standard of subjective deliberate indifference as enunciated by the United States Supreme Court in *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S.Ct. 1970, 1977 (1994). *Hare v. City of Corinth*, 74 F.3d 633, 643 (5th Cir. 1996).

With respect to the claims falling into the category of "conditions of confinement," the pre-trial detainee is not permitted to be punished. *Bell v. Wolfish*, 441 U.S. 520, 535, 99 S.Ct. 1861 (1979). The proper inquiry is whether the complained-of conditions amount to punishment of the detainee. *Id*. A pre-trial detainee's due process rights are said to be "at least as great as the Eighth Amendment protections available to a convicted prisoner." Hare,

74 F.3d, at 639 (5th Cir. 1996), quoting, *Revere v. Massachusetts Gen. Hosp.*, 463 U.S. 239, 244, 103 S.Ct. 2979, 2983 (1983). "[A] pre-trial detainee cannot be subjected to conditions or restrictions that are not reasonably related to a legitimate governmental purpose." *Hare*, 74 F. 3d, at 640.

In analyzing Plaintiff's allegations regarding the conditions of confinement, the proper inquiry is whether these allegations involve conditions amounting to punishment of the detainee. *Bell*, 441 U.S. at 535. To determine whether a condition of pretrial detention amounts to punishment, the Court must decide whether the condition is imposed for the purpose of punishment or whether it is incident to some legitimate governmental purpose and whether it is excessive in relation to that purpose. *Bell*, 441 U.S. at 538. However, for all detainees, "'[t]here is, of course, a *de minimis* level of imposition with which the Constitution is not concerned.'" *Bell v. Wolfish*, 441 U.S. at 539 n. 21, 99 S.Ct. at 1874 n. 21, quoting *Ingraham v. Wright*, 430 U.S. at 674, 97 S.Ct. at 1414). "The Constitution does not mandate comfortable prisons . . . but neither does it permit inhumane ones." *Harper v. Showers*, 174 F.3d 716, 719 (5th Cir. 1999), quoting, *Woods v. Edwards,* 51 F.3d 577, 581 (5th Cir. 1995). "Restraints that are reasonably related to the institution's interest in maintaining jail security do not, without more, constitute unconstitutional punishment, even if they are discomforting and are restrictions that the detainee would not have experienced had he been released." *Bell,* 99 S.Ct. at 1875. Courts need not "detail the precise extent of the legitimate governmental interests," however, "the effective management of the detention facility . . . is a valid objective that may justify imposition of

9

conditions and restrictions of detention and dispel any inference that such restrictions are intended as punishment." *Id.* In sum, under this standard, Plaintiff's complaint must demonstrate some intent to punish by the defendant to support a constitutional claim.

Plaintiff alleges that after sleeping through headcount, he was deprived of his mattress and bedding for ten hours. He alleges that this amounted to punishment without a disciplinary hearing. Plaintiff claims his degenerative back condition was aggravated by the punishment. In *Bell v. Wolfish*, 441 U.S. 520, 99 S.Ct. 1861, the Supreme Court examined some aspects of the constitutional rights of pretrial detainees. *Bell* teaches that punishment cannot be inflicted upon pretrial detainees prior to an adjudication of guilt in accordance with due process of law. The inquiry, however, does not end with the designation of a condition of confinement as "punishment." To distinguish between impermissible and permissible measures, the *Bell* Court stated:

> A court must decide whether the disability is imposed for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose. See *Flemming v. Nestor*, [363 U.S. 603,] at 613-617 [, 80 S.Ct. 1367, 1373-76, 4 L.Ed.2d 1435].... [I]f a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to "punishment." Conversely, if a restriction or condition is not reasonably related to a legitimate goal--if it is arbitrary or purposeless--a court permissibly may infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees qua detainees.
> *Id.* at 538-39, 99 S.Ct. at 1873-74 (footnotes omitted).

*Bell* was a class action seeking injunctive relief and challenging various general conditions, practices, and policies to which all pretrial detainees were subjected, including

double-bunking, strip-searches, and various other security measures. The conditions imposed on the pretrial detainees in *Bell* involved no direct or individualized disciplinary or deterrent purpose. Here, by contrast, the restrictions on privileges are directly related to the exercise of the prison staff's disciplinary authority by punishing Ray for his institutional misconduct, sleeping through headcount. Although factually distinguishable, the theoretical constitutional premises of *Bell* 's analysis provides some rational guidance in this case.

On the authority of *Bell*, it may be divined that even if a restriction or condition may be viewed as having a punitive effect on the pretrial detainee, it is nonetheless constitutional if it also furthers some legitimate governmental objective such as addressing a specific institutional violation and is not excessive in light of the seriousness of the violation. *Bell,* 441 U.S. at 538-39, 99 S.Ct. at 1873-74. Among the legitimate objectives recognized by the Supreme Court are ensuring a detainee's presence at trial and maintaining safety, internal order, and security within the institution. *Bell,* 441 U.S. at 540, 99 S.Ct. at 1874.

In the instant case, the undersigned finds that the sanction imposed for Plaintiff sleeping through headcount is reasonably related to the institution's legitimate objective recognized by the Supreme Court of maintaining safety, internal order, and security within the institution, a consideration "peculiarly within the province and professional expertise of corrections officials" to which this court must ordinarily defer. See *Bell,* 441 U.S. at 540, 99 S.Ct. at 1874, and 1874-75 n. 23. Moreover, the undersigned cannot find that the sanction imposed was excessive or so extreme as to be unreasonable by the constitutional

standard. The Court notes that Plaintiff was not deprived of his mattress and bedding during sleeping hours. Thus, plaintiff has failed to set forth a constitutional claim.

These findings conform with the Supreme Court's repeated admonition that it is not the role of this Court to second guess prison officials or their decisions regarding effective management and security. See *Bell,* 99 S.Ct. 1874-75 and 1875 at fn 23 ("such considerations are peculiarly within the province and professional expertise of corrections officials, and, in the absence of substantial evidence in the record to indicate that the officials have exaggerated their response to these considerations, courts should ordinarily defer to their expert judgement...."); *Rhodes,* 101 S.Ct. at 2401-02 ("courts cannot assume that...prison officials are insensitive to the requirements of the Constitution or to the perplexing sociological problems of how to best achieve the goals [of the institution]"); *Hudson v. McMilliam*, 112 S.Ct. 995, 999 (1992)("prison administrators...should be accorded wide ranging deference in the adoption and execution of policies and practices that in their judgments are needed to preserve internal order and discipline and to maintain institutional security.").

Accordingly, Plaintiff's due process claim should be dismissed as frivolous.

**Access to the Court**

Plaintiff claims he was denied legal materials and his legal copies were limited while working on this law suit. Prisoners have a constitutional right of meaningful access to the courts. *Degrate v. Godwin*, 84 F.3d 768, 768-69 (5th Cir.1996) (quoting *Bounds v. Smith*, 430 U.S. 817, 828, 97 S.Ct. 1491, 1498, 52 L.Ed.2d 72 (1977)). However, this

constitutional guarantee is not without limitation. *Lewis v. Casey,* 518 U.S. 343 (1996) (quoting *Turner v. Safley*, 482 U.S. 78, 89, 107 S.Ct. 2254, 2261-62, 96 L.Ed.2d 64 (1987)).

In *Lewis v. Casey*, 518 U.S. 343, (1996), the Supreme Court reviewed its holding in *Bounds v. Smith*, 430 U.S. 817, (1977) which is the source of a prisoner's constitutional right to "meaningful access to the courts." While the Supreme Court reaffirmed a prisoner's right of access to the courts in *Lewis*, the court limited the parameters of *Bounds* and set forth a standard to be applied when determining whether to grant relief for an access to the courts violation. In so holding, the Court noted that a prisoner must show an actual injury, explaining that this requirement is derived from the doctrine of standing. *Lewis,* 116 S.Ct. at 2179. The court used the analogy of a prisoner who is denied access to that of a healthy prisoner who has been deprived of medical treatment. In both cases, neither the access deprived prisoner nor the healthy prisoner have sustained constitutional injury, and thus, are not entitled to relief under § 1983. The court emphasized that the court's role is to provide relief to claimants who have suffered actual harm, not to interfere with the management of prisons.

Accordingly, the Fifth Circuit has held that a prisoner cannot prevail on an access to the courts claim without proving an actual injury in non-frivolous litigation as a result of the defendant's alleged unconstitutional conduct. *Ruiz v. United States*, 160 F.3d 273, 275 (5th Cir. 1998); *Chriceol v. Phillips*, 169 F.3d 313, 317 (5th Cir. 1999).

Application of the actual injury requirement to the instant case supports a finding that Plaintiff's claim is frivolous. Clearly, Plaintiff has not satisfied the "actual injury"

requirement. Plaintiff's complaint reveals on its face that he was able to clearly present his claims to this Court. Thus, he has failed to state any actual injury. Accordingly, Plaintiff's complaint regarding the denial of access to the courts should be dismissed as frivolous.

## CONCLUSION

Because Plaintiff is a prisoner, this Court may dismiss the complaint before or after service of process, and before or after answers have been filed, if it finds the complaint "frivolous" or if it "fails to state a claim upon which relief may be granted". *See* 28 U.S.C. § 1915A; *See Martin v. Scott*, 156 F.3d 578, 579-80 (5th Cir. 1998), *cert. denied*, 527 U.S. 1041 (1999).

Accordingly;

**IT IS RECOMMENDED** that Plaintiff's civil rights complaint be **DISMISSED WITH PREJUDICE** as frivolous under 28 U.S.C. § 1915(e).

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have ten (10) business days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another party's objection within ten (10) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendations set forth above, within ten (10) days after being served with a copy shall

bar that party, except upon grounds of plain error, from attacking, on appeal, the proposed factual findings and legal conclusions that were accepted by the district court and that were not objected to by the aforementioned party. *See Douglass v. U.S.A.A.*, 79 F.3d 1415 (5th Cir. 1996) (en banc).

**THUS DONE AND SIGNED**, in chambers, in Monroe, Louisiana, on this 30th day of January, 2006.

CC: SMH

# UNITED STATES DISTRICT COURT

## FOR THE WESTERN DISTRICT OF LOUISIANA

### SHREVEPORT DIVISION

---

| | |
|---|---|
| **JIMMIE N. RAY** | **CIVIL ACTION NO. 04-617-P** |
| **VERSUS** | **JUDGE HICKS** |
| **STEVE PRATOR, ET AL.** | **MAGISTRATE JUDGE HAYES** |

---

# J U D G M E N T

For the reasons stated in the Report and Recommendation of the Magistrate Judge previously filed herein, and after an independent review of the record, including written objections filed by Plaintiff, and determining that the findings are correct under the applicable law;

**IT IS ORDERED** that Plaintiff's civil rights complaint is **DISMISSED WITH PREJUDICE** as frivolous pursuant to 28 U.S.C. § 1915(e).

**THUS DONE AND SIGNED**, in chambers, in Shreveport, Louisiana, on this 30th day of January, 2006.

KAREN L. HAYES
U. S. MAGISTRATE JUDGE

cc: SMH